**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Jacob HARRISON, Jr., Defendant– Appellant.**

**United States of America, Plaintiff–Appellee,**

**v.**

**Casey Seon Burnett, Defendant– Appellant.**

**Nos. 99–4417, 99–4492.**

United States Court of Appeals, Fourth Circuit.

Filed Sept. 27, 2001.

Decided Nov. 16, 2001.

**ARGUED:** Deborah R.J. Shupe, Louthian & Louthian, Columbia, SC, for Appellants. Alfred William Walker Bethea, Assistant United States Attorney, Florence, SC, for Appellee. **ON BRIEF:** Timothy E. Meacham, Jebaily, Glass & Meacham, P.A., Florence, SC, for Appellant Harrison J. Rene Josey, United States Attorney, Florence, SC, for Appellee.

Before MOTZ, KING, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge GREGORY wrote the majority opinion, in which Judge KING joined. Judge DIANA GRIBBON MOTZ wrote an opinion concurring in the judgment.

**OPINION**

GREGORY, Circuit Judge.

Jacob Harrison, Jr. and Casey Seon Burnett each pled guilty to armed bank robbery, 18 U.S.C.A. § 2113(a), (d) (West 2000), 18 U.S.C.A. § 2 (West 2000), and using or carrying a firearm in a crime of violence, 18 U.S.C.A. § 924(c) (West 2000), 18 U.S.C. § 2 (1994). For the bank robbery, Harrison was sentenced to a term of fifty-seven months imprisonment, and Burnett received a sentence of eighty months. Each received a ten-year consecutive sentence for the § 924(c) violation. Harrison contends that the district court erred in sentencing him by making adjustments for assault on a law enforcement officer during flight, *U.S. Sentencing Guidelines Manual* § 3A1.2(b) (1998), and reckless endangerment during flight, USSG § 3C1.2. Both appellants argue that the district court erred in sentencing them by making adjustments under § 3A1.2(b) and § 3C1.2 based on the same conduct, and that the district court erred in sentencing them to ten-year consecutive sentences for their firearm convictions when neither was charged with violating § 924(c)(1)(B)(i). Burnett further maintains that he received ineffective assistance of counsel at sentencing. We affirm.

I.

On December 10, 1998, Harrison, Burnett, and Tabari Spann robbed a bank in Marion, South Carolina. Harrison did not carry a gun into the bank. Burnett and Spann carried the weapons, an alleged MAC–11 and a .38 caliber revolver. After the robbery, Harrison ran to a waiting vehicle driven by Burnett's wife, Chundra Burnett. Burnett and Spann ran to another waiting vehicle driven by Fredericka Stanley. Four minor children, aged eight months to two years, were also passengers in the cars. Police arrived quickly, and as the vehicles left the parking lot adjacent to the bank, Spann fired the purported MAC 11 at the pursuing officers from the passenger side window. A high-speed chase followed, and both getaway cars crashed after fleeing for ten or twelve miles. No one was seriously injured.

In sentencing both Harrison and Burnett, the district court added three offense levels under USSG § 3A1.2(b), finding Spann had assaulted the police officers in a manner that created a substantial risk of serious bodily injury by firing a gun at them. The court added another two levels under USSG § 3C1.2, finding that the chase created a danger of serious bodily injury to the children in the getaway cars and to the public.

Harrison did not contest the enhanced sentence under § 924(c), but Burnett did, arguing that the shots fired at the officers were not part of the offense of conviction (the bank robbery). He also questioned whether the MAC–11 charged in the indictment was a semiautomatic assault weapon as defined in § 921(a)(30), which lists specific weapons, not including the MAC–11. After hearing the testimony of a federal agent, the district court found that the firearm charged as a MAC–11 was actually a SWD M–11, a weapon listed in § 921(a)(30).

Burnett also asserted that he should be sentenced under the pre 1998 version of § 924(c) because, after the Supreme Court's decision in *Jones v. United States*, 526 U.S. 227, 251–52, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), enhancements for such factors were elements of the offense that were required to be charged and proved beyond a reasonable doubt. The district court found that Burnett had been charged under the amended version of § 924(c), and Burnett did not pursue the *Jones* argument further.

## II.

■ We review a district court's legal determinations under the Sentencing Guidelines de novo. *United States v. Daughtrey*, 874 F.2d 213, 216–17 (4th Cir. 1989). However, findings by the district court for purposes of sentencing which required no legal interpretation of a Guideline are findings of fact, and may not be disturbed absent clear error. *Id.* Thus, we review the district court's enhancements to appellants' sentences for clear error.

### A.

■ We find first that the enhancements under § 3A1.2(b) and § 3C1.2 were properly made in Harrison's case. Though Harrison did not carry a gun during the robbery, a defendant who undertakes a joint criminal activity is accountable, for sentencing purposes, for the reasonably foreseeable conduct of the others involved in furtherance of the jointly undertaken criminal activity. USSG § 1B1.3. Furthermore, Counts I and II of the indictment each charged appellants with aiding and abetting under 18 U.S.C.A. § 2. The district court did not clearly err in finding Harrison could reasonably foresee that one of his armed co-defendants might fire a weapon so as to create a risk of serious bodily injury and that the high-speed flight that followed the robbery would endanger the children in the cars and the public.

### B.

■ Second, we find that the court's decision to make adjustments under both § 3A1.2(b) and § 3C1.2 was not error because each adjustment was based on separate conduct. The commentary to § 3C1.2 directs that the enhancement should not be applied "where the offense guideline in Chapter Two or another adjustment in Chapter Three, results in an equivalent or greater increase in offense level solely on the basis of the same conduct." USSG § 3C1.2, comment. (n.1). However, both adjustments may be applied when each is triggered by separate conduct. *See, e.g., United States v. Alicea*, 205 F.3d 480, 486 (1st Cir.2000), *cert. denied*, 531 U.S. 909, 121 S.Ct. 256, 148 L.Ed.2d 185 (2000) (holding that high speed chase and shots fired at pursuing officers separately endangered police and public); *see also United States v. Matos–Rodriguez*, 188 F.3d 1300 (11th Cir.1999), *cert. denied*, 529 U.S. 1044, 120 S.Ct. 1547, 146 L.Ed.2d 359 (2000); *United States v. Miner*, 108 F.3d 967 (8th Cir.1997); *United States v. Alexander*, 48 F.3d 1477 (9th Cir.1995); *United States v. Swoape*, 31 F.3d 482 (7th Cir. 1994). The district court determined, and

we agree, that Spann's assault with a semi-automatic weapon on the police officers after leaving the bank was a separate occurrence from the flight at high speed, and that the latter created a separate risk of death or serious injury to both the children and the public, warranting an adjustment under § 3C1.2.

## III.

We find that the district court did not err in imposing a ten-year mandatory minimum sentence for each appellant's § 924(c) conviction. A sentence of not less than ten years is prescribed if the firearm is discharged, see § 924(c)(1)(A)(iii), or if the firearm is a "semiautomatic assault weapon." See § 924(c)(1)(B)(i). The term "semiautomatic assault weapon" is defined in 18 U.S.C.A. § 921(a)(30) (West 2000). Burnett and Harrison argue that the subsections of § 924(c) set out separate crimes, and that, because the indictment did not charge that either of the weapons employed was a semiautomatic assault weapon, and that factor was not proved beyond a reasonable doubt, their enhanced sentences are unlawful. They rely on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Castillo v. United States*, 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000); and *Jones*.

█ Burnett preserved this issue for review by arguing that he could not be sentenced under the current version of § 924(c) because, under *Jones*, the sentencing enhancements were elements that were required to be, and had not been, "pleaded and proved." With respect to Harrison, we review this issue for plain error because he did not raise it below. *United States v. Olano*, 507 U.S. 725, 731–32, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (holding when issue not preserved for appeal, defendant must show error that was plain, affected substantial rights, and seri-ously affects the fairness, integrity, or public reputation of judicial proceedings).

█ This court has recently held that § 924(c)(1)(A) sets out sentencing factors, not elements of separate offenses. *United States v. Harris*, 243 F.3d 806, 812 (4th Cir.2001). *See also United States v. Barton*, 257 F.3d 433 (5th Cir.2001); *United States v. Pounds*, 230 F.3d 1317 (11th Cir. 2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 1631, 149 L.Ed.2d 492 (2001) (finding that § 924(c)(1)(A)(iii) is a penalty provision with stiffer sentencing implications when a firearm is discharged); *United States v. Carlson*, 217 F.3d 986 (8th Cir. 2000), *cert. denied*, 531 U.S. 1095, 121 S.Ct. 822, 148 L.Ed.2d 706 (2001) (holding that § 924(c)(1)(A)(i) is a penalty provision with sentencing implications when a firearm is brandished). Thus, because one of the firearms was discharged during the offense, the district court was free to impose a ten-year sentence on both Burnett and Harrison under § 924(c)(1)(A)(iii).

Though it is unclear whether the district court sentenced Harrison under § 924(c)(1)(A)(iii) or § 924(c)(1)(B)(i), it appears that for Burnett, the district court found that the ten year consecutive sentence applied because a semiautomatic assault weapon was used in the robbery. 18 U.S.C.A. § 924(c)(1)(B)(i). We recognize that under *Harris*, sentencing would have been appropriate if the district court imposed the ten years for violation of § 924(c)(1)(A)(iii). However, for the purposes of this appeal, we assume both defendants were sentenced under § 924(c)(1)(B)(i), and therefore we confine our review to sentencing under that subsection of the statute.

█ Appellants concede that under *Harris*, § 924(c)(1)(A) sets up sentencing factors, but argue that subsections under § 924(c)(1)(B) create elements of separate

offenses that must be charged and proved beyond a reasonable doubt.[1] Appellants rely heavily on the Supreme Court's decision in *Castillo v. United States*, 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000). There, the Court found that Congress intended the firearm type-related words (such as machine-gun) it used in § 924(c)(1) to refer to elements of separate, aggravated crimes rather than sentencing factors that authorize an enhanced penalty. *Id.* at 131, 120 S.Ct. 2090. The Court concluded that because the statute's language, structure, context and history favored a "new crime" interpretation, the indictment must identify the firearm type, and that element must be proved beyond a reasonable doubt. *Id.* at 123–24, 120 S.Ct. 2090. Appellants recognize that *Castillo* was based on a previous version of § 924(c),[2] but incorrectly maintain that the analysis is the same under both versions.

The petitioners in *Castillo* were members of the Branch Davidian religious sect who were involved in the confrontation with ATF agents near Waco, Texas in 1993. *Id.* at 122, 120 S.Ct. 2090. They were charged, among other things, with violation of § 924(c)(1) (1988 ed.). *Id.* In 1998, the statute was amended, and the language and structure of the statute changed. *See* 18 U.S.C.A. § 924, Historical and Statutory Notes/Amendments. Thus, though *Castillo* is a recent opinion, its holding, which is substantially based on the language and structure of the statute before it was amended, is distinguishable.

First, and most important to our analysis, we note that the language of·§ 924(c) has changed. The statute no longer provides for a determinate statutory sentence. Instead, it requires a sentence of *"not less than* 10 years" for the use of a semiautomatic assault weapon, and *"not less than* 30 years" for a machine-gun.[3] This is the language of a mandatory minimum sentence, to be imposed where a defendant has committed a base crime and certain aggravating circumstances are present. Thus, as a provision marking out a separate offense, § 924(c)(1)(B) would be incomplete; it sets forth no determinate

1. The indictment charged the appellants with knowingly using and carrying a "Mac–11 semi-automatic pistol." Appellants argue that the indictment was insufficient because it did not state that the weapon was a "semiautomatic assault weapon."

2. (c)(1) Whoever, during and in relation to any crime of violence ..., uses or carries a firearm, shall, in addition to the to the punishment provided for such crime of violence ..., be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle [or a] short-barreled shotgun to imprisonment for ten years, and if the firearm is a machine gun ... to imprisonment for thirty years.

(1988 ed., supp. V).

3. (c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence, ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

(B) If the firearm possessed by a person convicted of a violation of this subsection—

(i) is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years; or

(ii) is a machine-gun or a destructive device, or is equipped with a firearm silencer or firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30 years.

sentence or even any upper limit on sentencing. It makes sense only as a sentencing factor that cabins a judge's discretion when imposing a sentence for the base offense in § 924(c)(1), for which the maximum penalty is life imprisonment.

In addition to the change in the statute's language, we note that the structure of the statute also changed with the 1998 amendment. In reaching its decision in *Castillo* that this earlier version of § 924(c)(1) created separate criminal offenses based on the type of firearm used, the Supreme Court emphasized the importance of the statute's structure. The Court noted that "Congress placed the element 'uses or carries a firearm' and the word 'machine gun' in a single sentence, not broken up with dashes or subsections." *Castillo*, 530 U.S. at 125, 120 S.Ct. 2090. The next three sentences that follow the above quoted section of the pre 1998 § 924(c)(1) refer directly to sentencing: the first to recidivism, the second to concurrent sentences, the third to parole. *Id.* The Supreme Court found that these "structural features strongly suggest that the basic job of the entire first sentence is the definition of crimes and the role of the remaining three is a description of the factors (such as recidivism) that ordinarily pertain only to sentencing." *Id.* As the Supreme Court recognized in *Castillo*, the statute's 1998 restructuring, which separated different parts of the first sentence (and others) into subsections, suggests the "contrary interpretation," favoring sentencing factors over elements. *Id.*

We find our reasoning to be in accord with the Seventh Circuit's opinion in *United States v. Sandoval*, 241 F.3d 549 (7th Cir.2001). That court determined that the classification of a firearm as a "semi-automatic assault weapon" under § 924(c)(1)(B)(i) is a sentencing factor rather than an element of the offense, so the classification need not be proved beyond a reasonable doubt. *Id.* at 550–51. The Seventh Circuit found there was no *Apprendi* violation because convictions under § 924(c) carry a statutory maximum sentence of life imprisonment, regardless of what subsection the defendant is sentenced under. *Id.* at 551. The classification of the firearm—here as a semiautomatic assault weapon—did not increase the maximum penalty; rather it raised the minimum penalty from 5 to 10 years. *Id.*

In reaching its decision, the Seventh Circuit scrutinized the statutory structure of § 924(c), both before and after the 1998 Amendment. It distinguished *Castillo* as "an old case (governed by old law)." *Id.* at 551, n. 1. The Court noted that the "structure of the present incarnation of § 924(c)(1)—the one at issue here—is different." *Id.* at 551. Now, the first clause of § 924(c)(1), standing alone, defines the offense of using or carrying a firearm during a crime of violence, while subsections (A) and (B) single out subsets of those persons [who carry or use firearms during crimes of violence or drug trafficking] for more severe punishment. The change in the language of the statute, coupled with this structural change, favors the "sentencing factor" interpretation. As the holding in *Sandoval* comports with our decision in *Harris* and our interpretation of the statutory changes, we find that the district court properly imposed the enhanced sentences.

### IV.

Finally, Burnett claims that his attorney was ineffective in failing to challenge the sufficiency of the indictment to support an enhanced sentence based on possession of a semiautomatic assault weapon, in failing to investigate the government's evidence concerning the firearm, and in failing to raise the issue at sentencing. We find that

the record does not conclusively demonstrate that Burnett's attorney was ineffective. Therefore, the claim of ineffective assistance should be raised in a motion under 28 U.S.C.A. § 2255 (West Supp. 2000). Accordingly, we affirm the sentences.

*AFFIRMED.*

DIANA GRIBBON MOTZ, Circuit Judge, concurring in the judgment:

I concur in the judgment and in the majority's emphasis on the critical revisions in the language of § 924(c)(1)(B), but I write separately because I do not agree entirely with the remainder of the majority's rationale or its characterization of *Castillo v. United States,* 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000).

In *Castillo,* the Supreme Court did closely examine the language and structure of § 924(c), as the majority suggests, but it did not rest there. The Court also considered the statute's "context, history, and such other factors as typically help courts determine a statute's objectives." *Id.* at 124, 120 S.Ct. 2090. In particular the Court noted that "statutory drafting occurs against a backdrop ... of traditional treatment of certain categories of important facts." *Id.* (quoting *Jones v. United States,* 526 U.S. 227, 234, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)).

It therefore mattered to the Court in *Castillo* that there is a "great" difference between using a machine gun and using a pistol, "both in degree and kind." *Id.* at 126, 120 S.Ct. 2090. As the Court recounted, this difference had been recognized by "substantive distinctions" in "numerous [federal] gun crimes" that punish the transport, sale, or manufacture of machine guns and semiautomatic assault weapons while placing no restrictions on pistols. *Id.* The *Castillo* Court also noted that state legislatures, judges, and the Manual of Model Criminal Jury Instructions have all commonly made this distinction, and that courts have not traditionally used firearm type as a sentencing factor "in respect to an underlying 'use or carry' crime." *Id.* These historic distinctions were of special importance to the Court in understanding § 924(c), because they "concern[ed] the nature of the element lying closest to the heart of the crime at issue"—using or carrying a firearm. As such, they provided strong support for the Court's conclusion that Congress meant to make use of a machine gun a separate crime in old § 924(c). *Id.*

This part of *Castillo*'s analysis applies equally to revised § 924(c), which requires a significantly higher minimum penalty for use of a machine gun than for use of other firearms—thirty years instead of five. Recently, we had occasion to examine another statute with similar features—a "steeply higher penalt[y]" that depended on facts "that the states and federal government traditionally have considered elements of an offense rather than sentencing factors"—and determined that the statute described a separate offense rather than a sentencing factor. *United States v. Campbell,* 259 F.3d 293, 299 (4th Cir.2001) (also noting that *Castillo,* 530 U.S. at 125, 120 S.Ct. 2090, and *Jones,* 526 U.S. at 233, 119 S.Ct. 1215, teach that a statute's "look" is not dispositive "[w]here other factors persuasively indicate that Congress' intent was to create separate offense elements").

Nevertheless, the goal of our analysis is to ascertain Congress' intent, and Congress can make firearm type a sentencing factor if it writes language that is clear enough to do so, even in light of the strong contrary tradition. In the case of § 924(c)(1)(B) I think it did, by failing to provide for determinate sentences. As the majority notes, if this were "a provision marking out a separate offense" it would

be "incomplete." *Ante* at 225. Section 924(c)(1)(B) "sets forth no determinate sentence or even any upper limit on sentencing." *Id.* The statute therefore "makes sense only as a sentencing factor that cabins a judge's discretion when imposing a sentence for the base offense in § 924(c)(1)." *Id.* If § 924(c)(1)(B) provided for a determinate sentence, but was otherwise written and structured exactly as it is now, I would hold that it created a separate offense.