**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 98-4548

VINSON LAMONT JONES,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge;
Robert R. Merhige, Jr., Senior District Judge.
(CR-97-308)

Argued: January 28, 2000

Decided: February 25, 2000

Before LUTTIG and KING, Circuit Judges, and
Norman K. MOON, United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed in part and vacated in part by published opinion. Judge Lut-
tig wrote the opinion, in which Judge King and Judge Moon joined.

_____

**COUNSEL**

**ARGUED:** Christopher Ford Cowan, COWAN, NORTH &
LAFRATTA, L.L.P., Richmond, Virginia, for Appellant. James Brien
Comey, Jr., OFFICE OF THE UNITED STATES ATTORNEY,
Richmond, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey,

United States Attorney, Laura A. Colombell, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

_____

**OPINION**

LUTTIG, Circuit Judge:

Appellant Vinson Jones appeals from his conviction and sentence for possession of heroine residue, possession of cocaine base, and possession of cocaine base with intent to distribute. For the reasons that follow, we affirm in part and vacate in part.

I.

On September 17, 1997, five Richmond police officers patrolling near an area known for frequent drug trafficking noticed a group of men standing behind a parked car on a street corner. One of the men, Charles Claxton, had money in his hand, which was extended toward defendant-appellant Vinson Jones, and Jones' hand was extended toward Claxton. As the officers approached the men, they noticed that Jones was carrying a grocery bag. When they saw the officers, Claxton placed a small plastic bag, which contained white powder, in his mouth, and Jones turned and walked quickly away, toward a residence. One of the officers followed Jones and ordered him to stop, but Jones ran up the porch steps, entered the house, and slammed and locked the door. The officer saw Jones run up the stairs inside, clutching his pocket.

The officer banged on the front door, and entered the house without consent after an elderly woman, who turned out to be Jones' grandmother, appeared at the door. The officer went upstairs, encountered Jones exiting a bedroom, and arrested him. The officer then conducted a protective sweep of the upper floor of the house, and found in the bedroom the grocery bag he had seen Jones carrying. He also saw a small plastic bag in the toilet. The officer returned downstairs, and obtained consent to search the house from Jones' grandmother. In the bedroom that the officer had seen Jones leaving, authorities

2

found 3.4 grams of cocaine base, drug sale paraphernalia (baking soda, a scale, sifters, test tubes, razor blades, and tin foil rolling papers), and papers belonging to Jones and addressed to him at the residence.

Jones was convicted after a bench trial of possession of heroine residue, possession of crack cocaine, and possession of crack cocaine with intent to distribute, for which he was sentenced to twelve, twelve, and forty-eight months imprisonment, respectively, to run concurrently.

II.

Although Jones concedes that the officers had sufficient articulable suspicion to approach him and Claxton initially, he claims that the officers lacked probable cause to arrest him when they entered his home. Jones therefore asserts that the evidence secured from his home by the officers was obtained in violation of his Fourth Amendment rights, and should have been excluded at trial. However, prior to entering Jones' home, a police officer saw Jones: (1) take part in an apparent drug transaction near an area known for a high incidence of drug trafficking, (2) walk away while his companion attempted to swallow a small bag containing white powder when the pair spotted the police, (3) run into a residence when ordered to halt by the officer, (4) slam and lock the door behind him when he entered the residence, and (5) run up a staircase within the residence while clutching his pocket. Under these circumstances, the officer clearly had probable cause to arrest Jones at the time the officer entered Jones' home.

Jones correctly points out that, even assuming the existence of probable cause, exigent circumstances are required to justify an officer's warrantless entry into a residence. We have no difficulty concluding that such circumstances existed here. First, the officers reasonably believed that evidence could be destroyed if they waited to obtain a warrant before entering Jones' home. See United States v. Turner, 650 F.2d 526, 528 (4th Cir. 1981). Second, they were in "hot pursuit" of Jones when he entered the house. See United States v. Santana, 427 U.S. 38, 42-43 (1976). Third, they had no idea whether the house belonged to Jones, and thus were reasonably concerned for

3

the safety of innocent inhabitants of the house. See United States v. Moss, 963 F.2d 673, 674, 678 (4th Cir. 1992).

We therefore conclude that the officers had probable cause to arrest Jones, amid the requisite exigent circumstances, at the time they entered his residence, and that the district court properly admitted into evidence the items obtained during their consensual search of Jones' home.

III.

We also reject Jones' argument that the evidence below was insufficient to establish that he possessed or intended to distribute the 3.4 grams of cocaine at issue.

As to possession, the government was not required to prove below that Jones actually possessed the drugs on his person at the time of his arrest. Rather, evidence that a defendant exercised "dominion and control" over narcotics is sufficient to support a possession conviction. United States v. Harris, 31 F.3d 153, 156 (4th Cir. 1994). Given that the cocaine at issue here was found behind a dresser drawer in the bedroom from which the officer saw Jones exit and in which authorities discovered Jones' personal papers, we cannot say that the district court, sitting as trier of fact, erred in finding that Jones possessed the cocaine.

As to intent to distribute, Jones asserts that the small quantity of cocaine discovered suggests an intent to use the cocaine personally, rather than to distribute it. However, drug sale paraphernalia was discovered along with the cocaine in the bedroom, and an expert testified at trial that 3.4 grams of cocaine could be redistributed in as many as 35 units, see J.A. 118. The evidence was thus clearly sufficient to permit the trier of fact to conclude that Jones intended to distribute the cocaine.

IV.

Jones argues, and the government concedes, that possession of cocaine base is a lesser included offense of possession with intent to

4

distribute cocaine base, see United States v. Baker, 985 F.2d 1248, 1259 (4th Cir. 1993), and that, because Jones was charged with and convicted of the two offenses with regard to the same 3.4 grams of cocaine, the possession conviction must be merged into the possession with intent to distribute conviction for sentencing purposes, see Brown v. Ohio, 432 U.S. 161, 169 (1977). As such, the district court erred in imposing on Jones a separate twelve-month sentence for possession of cocaine base, and we therefore vacate that portion of Jones' sentence.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court with respect to the denial of Jones' motion to suppress and the sufficiency of the evidence supporting his conviction. However, because we conclude that Jones' cocaine possession conviction should have been merged into the possession with intent to distribute conviction, we vacate the separate twelve-month sentence for the possession of cocaine base.

IT IS SO ORDERED

5